THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DONTE McCLELLON,

    Plaintiff,

v.

BANK OF AMERICA, N.A.,

    Defendant.

CASE NO. C18-0829-JCC

ORDER

This matter comes before the Court on Defendant's motion to dismiss (Dkt. No. 12) Plaintiff's amended complaint (Dkt. No. 11). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part Defendant's motion to dismiss (Dkt. No. 12) for the reasons explained herein.

I.     **BACKGROUND**

Plaintiff Donte McClellon ("McClellon"), proceeding *pro se*, alleges that Defendant Bank of America, N.A., ("BOA") is liable to him for two allegedly fraudulent wire transfers from his checking account in April 2017.[1] (Dkt. No. 11 at 2.) McClellon originally filed his

---

[1] This is one of six lawsuits filed by McClellon against various financial institutions, five of which are pending before the Court. *See McClellon v. OptionsHouse*, Case No. C18-0817-JCC, Dkt. No. 1-1 (W.D. Wash. June 5, 2018); *McClellon v. Wells Fargo Advisors Financial*

complaint in King County Superior Court, but BOA removed the case to this Court.[2] (Dkt. No. 1.) In his three-page complaint, McClellon made the following allegations against BOA:

> This is an action under the Uniform Commercial Code (4.22.005 to 925) and Washington Consumer Protection At, RCW 19.86.020, based upon Defendant's blatant self-dealing and other intentional negligent misconduct in conversion, freezing, pooling, otherwise manipulating Plaintiff's funds without Plaintiff's authorization.
>
> Plaintiff further allege that the Defendant breached the contract, failed to comply with Regulation E and committed the tort of negligence in the handling of Plaintiff's funds. The Plaintiff seeks compensatory damages and all other damages (i.e., direct and consequential damages) allowed by law, and payment of costs and attorneys' fees.
>
> Plaintiff opened an checking account with Defendant . . . Plaintiff timely filed his good faith Regulation E claims with Defendant but the Defendant failed to protect the checking account in subject, provisional credit the Plaintiff and have those funds be accessible to him.
>
> The fraudulent transactions at issue that took place in the checking account in subject are $123,553.15 on April 3rd, 2017 and $54,000.00 on April 18th, 2017 . . . Regulation E states that a provisional credit must be provided within 10 business days.[3]

(Dkt. No. 1-1 at 1–2.) BOA filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. (Dkt. No. 6.) The Court granted BOA's motion and dismissed McClellon's complaint without prejudice and with leave to amend. (Dkt. No. 10.) The Court noted that, "McClellon's claims are conclusory, in that they lack specific facts to show BOA was responsible for, or involved with, the alleged fraudulent transactions." (*Id*. at 5.)

McClellon timely filed an amended complaint. (Dkt. No. 11.) The amended complaint contains all of the allegations made in the original complaint. (*Compare* Dkt. No. 1-1, *with* Dkt.

---

*Network, et al.*, Case No. C18-0852-JCC, Dkt. No. 1-1 (W.D. Wash. June 12, 2018); *McClellon v. Capital One Bank N.A.*, Case No. C18-0909-JCC, Dkt. No. 1-1 (W.D. Wash. June 21, 2018); *McClellon v. Citigroup Global Markets Inc.*, Case No. C18-0978-JCC, Dkt. No. 1-1 (W.D. Wash. July 2, 2018).

[2] The Court denied McClellon's motion to remand. (Dkt. No. 10.)

[3] All of the allegations quoted in this order are taken verbatim from the complaint (Dkt. No. 1-1) and amended complaint (Dkt. No. 11).

No. 11.) The amended complaint additionally alleges that McClellon deposited all of the funds at issue into his checking account at BOA. (Dkt. No. 11 at 2.) McClellon asserts that:

> Bank of America failed to protect [his] funds because they did not properly verify whether the person doing wire transfers out of the account actually was the same person who deposited the funds. In other words, a Bank of America employee moved forward with the wire transfers without proper verifications and didn't thoroughly verify signatures to see if these wire transfers were actually being done by a person who deposited funds.

(*Id.*) McClellon states that he "timely informed Bank of America that his identity had been stolen prior to these wires taking place." (*Id.* at 3.) McClellon alleges that the wire transfers were executed from a BOA branch in Seattle, on dates when he was not in Seattle. (*Id.*) The amended complaint further alleges that McClellon "never gave any Bank of America employee any specific instruction or any instruction for that matter to wire transfer funds out of the checking account in subject in regards to these two transactions on April 3, 2017 and April 18, 2017." (*Id.*)

McClellon additionally claims that BOA engaged in self-dealing because "they earned a $30 fee on each wire transfer they initiated which highlights their involvement in the fraudulent transactions in subject here." (*Id.*) Regarding his Regulation E claim, McClellon states that, "Bank of America did not do a thorough investigation nor followed the 10 business day rule outlined in Regulation E. They never provisionally credited the Plaintiff for the amount of the fraudulent wires nor made any funds available to Plaintiff to actually withdraw as a depositor." (*Id.*)

BOA filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 12.) BOA asserts that the amended complaint suffers from the same deficiencies that the Court identified in its order dismissing McClellon's original complaint. (*Id.* at 1.) McClellon's response brief to BOA's motion to dismiss reads in its entirety: "Pro Se Plaintiff Donte McClellon hereby submits his opposition to Defendant's motion to dismiss and respectfully request that the court deny Defendant's motion to dismiss because Plaintiff has amended his complaint for the second time and provided proper service of his

original complaint to Defendant." (Dkt. No. 13.) McClellon contemporaneously filed a second amended complaint, without seeking leave of Court. (Dkt. No. 14.)

A party may amend a pleading once, as a matter of course, but "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the Court's leave." Fed. R. Civ. P. 15(a)(1), (2). McClellon was not entitled to file a second amended complaint as a matter of course because he had already amended his complaint. (*See* Dkt. No. 11.) Nor did McClellon receive written consent from BOA or leave from the Court to file a second amended complaint. (*See* Dkt. No. 16.) Therefore, the Court STRIKES McClellon's second amended complaint (Dkt. No. 14) and will not consider its allegations in deciding Defendant's motion to dismiss.

## II. DISCUSSION

### A. Legal Standard for Motion to Dismiss

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citation omitted). The Court holds *pro se* plaintiffs to less stringent pleading standards than represented plaintiffs, and liberally construes a *pro se* complaint in the light most favorable to the plaintiff. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

### B. McClellon's Claims

McClellon asserts the following causes of action against BOA: (1) violation of the Uniform Commercial Code ("UCC"); (2) violation of the Washington Consumer Protection Act,

Revised Code of Washington section 19.86.20 ("CPA"); (3) violation of Regulation E; (4) breach of contract; and (5) negligence. (Dkt. No. 11 at 1.)

        1.    <u>UCC Claim</u>

The amended complaint makes a single reference to McClellon's UCC claim. (Dkt. No. 11 at 1) ("This is an action under the Uniform Commercial Code (4.22.005 to 925)."). Washington has adopted Article 4A of the UCC ("Article 4A"), which deals with fund transfers from financial institutions such as banks. *See* Wash. Rev. Code 62A.4A. The amended complaint does not cite Article 4A, or explain which provisions of Article 4A BOA allegedly violated. (*See generally* Dkt. No. 11.) However, the Court will liberally construe the factual allegations contained in the amended complaint to interpret McClellon's claim as arising under Article 4A-204.

Article 4A regulates funds transfers from a customer's bank to third parties. *See* Wash. Rev. Code § 62A.4A-104 UCC Comment 1 ("Article 4A governs a method of payment in which the person making payment (the 'originator') directly transmits an instruction to a bank either to make payment to the person receiving payment (the 'beneficiary') or to instruct some other bank to make payment to the beneficiary."). Article 4A defines "funds transfers" as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order." *Id*. at 62A.4A-104(a). Funds transfers are commonly known as "wire transfers." *See* Wash. Rev. Code § 62A.4A-102 UCC Comment ("Article 4A governs a specialized method of payment referred to in the Article as a funds transfer but also commonly referred to in the commercial community as a wholesale wire transfer.").

Article 4A outlines the rights and obligations of banks and their customers in cases of unauthorized funds transfers. *See* Wash. Rev. Code § 62A.4A-204. Under the statute:

> If a receiving bank accepts a payment order issued in the name of its customer as

> sender which is . . . not authorized and not effective as the order of the customer under [the statue] . . . the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund.

*Id*. While Article 4A.204 makes banks generally liable to refund unauthorized payment orders, there are certain circumstances in which the bank will not be held liable. *See* Wash. Rev. Code § 62A.4A-202.

The Court concludes that the amended complaint states a facially plausible claim pursuant to Revised Code of Washington section 62.4A-204. McClellon alleges that he deposited $177,553.15 into his BOA checking account. (Dkt. No. 11 at 2.) McClellon further alleges that on April 3, 2017 and April 18, 2017, those funds were transferred out of his account without his authorization. (*Id*.) McClellon asserts that he never gave a BOA employee authorization to conduct the wire transfers at issue, and that he had informed BOA that his identify had been stolen prior to when the subject transfers occurred. (*Id*. at 3) McClellon further asserts that BOA neither provisionally credited his checking account after the purportedly fraudulent transfers, nor made the funds available for him to withdraw. (*Id*. at 2.) Accepting these factual allegations as true, as the Court must, McClellon has stated a plausible claim for relief. Therefore, BOA's motion to dismiss McClellon's UCC Article 4A claim is DENIED.

### 2. Common Law Claims

McClellon cannot maintain his common law causes of action for breach of contract and negligence because those claims are displaced by his Article 4A claim. In general, principles of law and equity supplement the UCC "[u]nless displaced by the particular provisions of this title." RCW 62A.1-103(b). Where a UCC provision has explicitly "displaced" a common law rule, the UCC provision governs. *See Lige Dickson Co. v. Union Oil Co. of Cal.*, 635 P.2d 103, 107 (Wash. 1981) (barring promissory estoppel claim in UCC sale of goods case).

As previously noted, Article 4A applies to all "funds transfers," as defined in the statute. Wash. Rev. Code § 62A.4A-104. The drafter's official commentary to that section makes clear

that Article 4A provides the only remedy for claims involving funds transfers:

> Funds transfers involve competing interests those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

Wash. Rev. Code § 62A.4A-102, UCC Comment. In other words, Article 4A displaces common law claims and remedies when they are based on the type of funds transfers defined by the statute.

Based on the factual allegations contained in the amended complaint, McClellon's claims for breach of contract and negligence are based on the allegedly unauthorized wire transfers that occurred in his BOA checking account. (*See generally* Dkt. No. 11.) The amended complaint does not contain any factual allegations to suggest McClellon's common law claims are based on conduct other than the unauthorized funds transfers. As the Court has already noted, McClellon's allegations are properly characterized as funds transfers as defined in Article 4A. Therefore, McClellon cannot maintain his common law claims for breach of contract and negligence, and those claims are DISMISSED with prejudice.[4]

### 3. CPA Claim

McClellon asserts a claim under the CPA "based upon Defendant's blatant self-dealing and other intentional negligent misconduct in conversion, freezing, pooling, otherwise manipulating Plaintiff's funds without Plaintiff's authorization." (Dkt. No. 11 at 1.) To plead a plausible CPA claim, a plaintiff must allege facts that satisfy the following elements: "(1) unfair

---

[4] A dismissal with prejudice is appropriate because further amendment would be futile. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

The amended complaint does not contain sufficient facts that allow a reasonable inference that BOA committed an unfair or deceptive act or practice. "A [CPA] claim may be based on a per se violation of a statute or on unfair or deceptive practices unregulated by statute but involving the public interest." *Blake v. Fed. Way Cycle Ctr.*, 698 P.2d 578, 581–82 (Wash. Ct. App. 1985). "A per se unfair trade practice exists when a statute that has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 396 P.3d 351, 367 (Wash. Ct. App. 2017). While the amended complaint plausibly alleges that BOA violate Article 4A, the Washington legislature has not declared that a violation of that statute represents a per se violation of the CPA. *See Haner v. Quincy Farm Chemicals, Inc.*, 649 P.2d 828, 833 (Wash. 1982) ("Violation of the UCC is not a per se showing of public interest sufficient to bring a private action under the Consumer Protection Act."). The amended complaint does not allege that BOA violated a statute other than Article 4A that may serve as the basis for a *per se* CPA violation.

Where an unfair or deceptive act or practice is not based on a statutory violation, a plaintiff must show that "the alleged act had the capacity to deceive a substantial portion of the public." *Hangman Ridge*, 719 P.2d at 535. An alleged deceptive act or practice does not meet this requirement if it is "unique to the relationship between plaintiff and defendant." *Behnke v. Ahrens*, 294 P.3d 729, 736 (Wash. Ct. App. 2012). Thus, "[t]o establish an unfair or deceptive act, there must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Id*. at 737.

McClellon has not alleged facts establishing that BOA's conduct had the capacity to deceive a substantial portion of the public. First, McClellon has not asserted facts that suggest

BOA acted deceptively in allowing the allegedly fraudulent wire transfers.[5] Second, the amended complaint does not contain sufficient facts to demonstrate that the alleged unfair act or practice—BOA's failure to verify the unauthorized transfers—has a real and substantial potential to be repeated. *See Behnke*, 294 P.3d at 737. In other words, McClellon's claims against BOA are specific to him, and do not amount to the type of deceptive or unfair practices that have the potential to deceive the public at large.

For the foregoing reasons, McClellon's CPA claim is DISMISSED with prejudice.

### 4. Regulation E Claim

McClellon alleges that BOA "failed to comply with Regulation E." (Dkt. No. 11 at 1.) In support of this claim, the amended complaint alleges: "Bank of America did not do a thorough investigation nor followed the 10 business day rule outlined in Regulation E. They never provisionally credited the Plaintiff for the amount of the fraudulent wires nor made any funds available to Plaintiff to actually withdraw as the depositor." (*Id*. at 2–3.)

The implementing regulations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.*, known as "Regulation E," broadly deal with the "basic rights, liabilities, and responsibilities of consumers who use electronic fund transfer and remittance transfer services and of financial institutions or other persons that offer these services." 12 C.F.R. § 1005.1. The regulations apply to "any electronic fund transfer that authorizes a financial institution to debit or credit a consumer's account." 12 C.F.R. § 1005.3(a). However, Regulation E does not apply to "[w]ire or other similar transfers." 12 C.F.R. § 1005.3(c)(3) ("The term 'electronic fund transfer' does not include . . . [a]ny transfer of funds through Fedwire or through a similar wire transfer system that

---

[5] The amended complaint does assert that BOA "engaged in blatant self-dealing because they earned a $30 fee on each wire transfer they initiated which highlights their involvement in the fraudulent transactions in subject here." (Dkt. No. 11 at 2.) That claim is conclusory, in that it fails to explain how BOA's imposition of a wire fee demonstrates that it was involved with the alleged fraudulent transaction. The Court also finds, as a matter of law, that the imposition of such a fee is not an unfair or deceptive act or practice.

is used primarily for transfers between financial institutions or between businesses.").

By its very terms, the amended complaint seeks to hold BOA liable for allegedly fraudulent wire transfers. (*See* Dkt. No. 11 at 2) ("[BOA] never provisionally credited the Plaintiff for the amount of the fraudulent wires nor made any funds available to Plaintiff to actually withdraw as the depositor."). Even accepting McClellon's allegations as true, Regulation E does not apply to the wire transfers at issue. *See* 12 C.F.R. § 1005.3(c)(3). Therefore, the Court DISMISSES McClellon's Regulation E claim with prejudice.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to DISMISS (Dkt. No. 12) is GRANTED in part and DENIED in part. In accordance with the Court's order:

1. Defendant's motion to dismiss is DENIED as to Plaintiff's claim pursuant to Washington Revised Code section 62.4A.

2. Defendant's motion to dismiss is GRANTED as to Plaintiff's statutory claims pursuant to the Washington Consumer Protection Act and Regulation E, as well as Plaintiff's common law claims of breach of contract, and negligence. Those claims are DISMISSED with prejudice and without leave to amend.

3. The Court STRIKES Plaintiff's second amended complaint (Dkt. No. 14) and DENIES Plaintiff leave to amend his complaint.

The Clerk is DIRECTED to send a copy of this order to Plaintiff.

DATED this 5th day of October 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE